# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**KELLY BLANCHET**

                                      **App. Case No. 21-5073**

    Plaintiff-Appellant

      **- vs -**

**CHARTER COMMUNICATIONS, LLC**

    Defendant-Appellee

---

## CORRECTED BRIEF OF PLAINTIFF-APPELLANT, Kelly Blanchet

---

APPEAL FROM THE UNITED STATES FEDERAL COURT OF THE
KENTUCKY EASTERN DISTRICT
Trial Court Case No. 2:18-CV-00188-WOB-CJS

ROBERT F. CROSKERY (KY 86204)
Croskery Law Offices
3905 Eastern Ave., Suite 200
Cincinnati, OH 45226
Ph: (513) 232-5297
Fax: (513) 426-7372
Email: rcroskery@croskerylaw.com
Counsel for Plaintiff-Appellant,
Kelly Blanchet

C. CELESTE CRESWELL
Kabat Chapman & Ozmer LLP
171 17th Street NW, Suite 1550
Atlanta, GA  30363
Ph: (404) 400-7300
Fax: (404) 400-7333
Email: ccreswell@kcozlaw.com
Counsel for Defendant-Appellee,
Charter Communications, LLC

## CORPORATE DISCLOSURE STATEMENT

Pursuant to 6th Cir. R. 26.1, Plaintiff - Appellant Kelly Blanchet, makes the following disclosure:

Plaintiff-Appellant Blanchet is not a subsidiary or affiliate of a publicly owned corporation

To Plaintiff-Appellant Blanchet's knowledge there is not a publicly owned corporation not a party to the appeal that has a financial interest in the outcome.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT …………………………… ii

TABLE OF AUTHORITIES ……………………………………………… vi

JURISDICTIONAL STATEMENT ……………………………………… vii

CITATION FORMS ……………………………………………………… viii

STATEMENT OF ISSUES FOR REVIEW ……………………………… 1

STATEMENT OF THE CASE …………………………………………… 2

    A. Procedural Posture ………………………………………………….. 2

    B. Statement of Facts …............................................ ……………… 2

        1. Kelly Blanchet was a very effective salesperson for Charter up to the time when she went on leave in July 11, 2016 for maternity leave, followed by PostPartum depression at the end of her leave on September 4, 2016 ………………………………………………… 2

        2. Kelly Approaches her Doctor and asks for time to Prepare to Return, as her medications are not adjusted; Charter's Authorized agent, Sedgwick, approves her for leave through February 1, 2017 ………. 3

        3. By February 3, 2017, Kelly Blanchet has sent in paperwork indicating a return around April 1, which is coded as pending approval by Sedgwick; there is evidence that Charter's Human Resources Director verbally approves a return of April 3 twice, but does not send paperwork; Kelly is informed that her April 3 return is approved by Charter's Sedgwick representative ………………………………………………… 5

        4. By March 9, 2017, Kelly Blanchet is looking forward to returning to work: She has made major breakthroughs, her husband is supporting her, her medication has allowed her to go out, and she is looking forward to a return to work, and she does not seek further extensions ………………………………………………………… 7

5.  In spite of their former verbal approval, and while, even by Charter's version Kelly's request for approval of an April 3, 2017 date, approved by her doctor, is pending, Charter, without engaging in any interactive dialogue with Kelly Blanchet Concerning the Return, sends a "Notice of Firing" on March 9, 2017, which is devastating to her ......... 9

SUMMARY OF ARGUMENT  ……………………………………... 10

STANDARD OF REVIEW  ………………………………………… 11

ARGUMENT  …..………………………………………………….. 11

A.  Assignment of Error  ..………………………………………… 11

First Assignment of Error  ............................................................... 11

THE TRIAL COURT ERRED, TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT, BY WEIGHING THE EVIDENCE AND CONCLUDING THAT CHARTER'S IN-HOUSE HUMAN RESOURCES MANAGER WAS INCAPABLE OF EXTENDING  KELLY BLANCHET'S EMPLOYMENT FOR THREE WEEKS, AS HAD BEEN PROMISED ON BEHALF OF CHARTER BY DEFENDANT-APPELLEE'S THIRD PARTY ADMINISTRATOR, AND THAT INSTEAD HER OSTENSIBLE FIRING BY CHARTER AND A SUBSEQUENT LETTER SENT IMMEDIATELY THEREAFTER CONFIRMING HER RETURN TO WORK IN THREE WEEKS WAS SIMPLY AN "INEXPLICABLE" MISTAKE  ……………………..  12

Issue Presented for Review and Argument  …………………………  12

1.  A Trial Court Must, in evaluating a Motion for Summary Judgment, Make all Reasonable Inferences Consistent with the Evidence in Favor of the Nonmoving Party And Refrain from Weighing Evidence to Reach Its Conclusions  …………………………………………………….  12

2.  A Reasonable Inference is That Kelly Blanchet's Firing Was An Administrative And Rescindable Error That Violated the Americans With Disabilities Act And That She Should Have Been Permitted to Return to Work, as Promised by Charter's Human Resources Manager Through Its Third Party Administrator  ………………………  12

3.  When an Employer does not possess Medical Records, Has already indicated that it will approve a Short Extension of Administrative Leave, and has Not engaged in an Interactive Process with An Employee to Gain Further Information about her status, the Firing After such Approval Violates the Americans With Disabilities Act and Defendant is Estopped From Using Ambiguous After-Acquired evidence ………………………………………………….. 13

4.  When an Employer Provides No Credible Reason For Firing an Employee at the Time it fires her, After it has Already Approved her Return Date, A Decision-maker can infer Pretext from the Act of Firing …………………………………………….…………….. 17

Second Assignment of Error (in the alternative).................…………… 18

    THE LOWER COURT ERRED, TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT, BY APPLYING BURDEN-SHIFTING ANALYSIS WHEN THE DIRECT EVIDENCE TEST SHOULD HAVE BEEN APPLIED ON THE FAILURE TO ACCOMMODATE CLAIM ….....................................……………..........… 18

1.  Under the precedent of *Fisher* v. *Nissan N. Am., Inc.*, —F.3d—; No. 18-5847 (CA6 Feb. 27, 2020), the Failure to Accommodate Claim shows Direct Evidence of Discrimination, as Defendant Appellee failed to engage in further interactive behavior regarding reasonable accommodation before firing Plaintiff ………………………. 18

2.  When the direct evidence test is applied, because Charter fired the Plaintiff after an initial approval of her requested accommodation as reasonable without engaging in an interactive dialogue and informing her of the contemplated firing, the employer violated the Americans with Disabilities Act ……………………………………….......... 19

CONCLUSION …………………………………………………….. 22

CERTIFICATE OF SERVICE ……………………………………… 22

ADDENDUM ……………………………………………………… 23-26

APPENDIX ………………………………………………………… 27

# TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc.
477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ………..    12

Bentkowski v. Scene Magazine, 637 F.3d 689, 693 (6th Cir. 2011) …    11

Dews v. A.B. Dick Co, 231 F.3d 1016, 1021 (6th Cir. 2000)  ……….    18

Fisher v. Nissan N. AM., Inc.,  -f.3d-; no. 18-5847
(ca6 feb. 27,2020)    ……………………………………………….. 1, 18, 19

Hicks v. Combs,
311 Ky. 149, 152, 223 S.W.2d  379, 381, 11 A.L.R.2d 1393  ……….    14

Jones v. Nissan North America (Case No. 09-5786)
(Sixth Circuit, 2011)  …………………………………………    21

Kleiber v. Honda of N. Amer. Mfg., 485 F.3d 862, 868   …………..    19

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.
475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)  …………    12

McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995)  ..  21-22

Simpson v. Yocum, 172 Ky. 449, 189 S.W. 439   …………………    15

Walsh v. United Parcel Service, 201 F.3d 718, 726, 727   …………..   15, 16

**Statutes, Rules, Constitutional Provisions**

28 U.S.C. §1331    …………………………………………………….    vii

42 U.S.C.  §12101 et seq   ………………………………….....…….    vii

42 U.S.C.  §12112(b)(5)(A)   ………………………………….....…….    18-19

## <u>STATEMENT OF JURISDICATION</u>

The Jurisdiction of this Court is undisputed, under 28 U.S.C. §1331 (federal question), as this case comes as a timely appeal as a matter of right from a decision of the United States District Court, Eastern District of Kentucky (Covington), for a case involving the Americans with Disabilities Act, 42 USC §12101 et. seq..

## CITATION FORMS

| | |
|---|---|
| RE # | Record Entry Number from the District Court Docket No. 2:18-cv-00188-WOB-CJS |
| PageID | District Court Page Identification Number |
| Blanchet Aff. | Affidavit of Kelly Blanchet dated May 22, 2020 |
| Depo Quigley | Deposition of Ryan Quigley dated October 28, 2019 |
| Depo Jolley | Deposition of Karen Jolley dated October 28, 2019 |
| Depo Docter | Deposition of Jayson Docter dated October 28, 2019 |
| Depo Blanchet | Deposition of Kelly Blanchet dated September 25, 2019 |
| Depo. Brown | Deposition of Richard Brown dated January 30, 2020 |
| Aff Glick | Declaration of Shaun Glick dated March 6, 2020 |
| Defendant/ Appellee MSJ | Memorandum of Law in Support of Defendant's Motion for Summary Judgment dated March 6, 2020 |
| Opinion | District Court's Memorandum Opinion and Order dated January 14, 2021 |
| Order | District Court's Judgment dated January 14, 2021 |

## <u>STATEMENT OF ISSUES FOR REVIEW</u>

A trial court must, in evaluating a motion for summary judgment, make all reasonable inferences consistent with the evidence in favor of the nonmoving party and refrain from weighing evidence to reach its conclusions.

A reasonable inference is that Kelly Blanchet's firing was an administrative and rescindable error that violated the Americans with Disabilities Act and that she should have been permitted to return to work, as promised by Charter's Human Resources Manager through its third-party administrator.

When an employer does not possess medical records, has already indicated that it will approve a short extension of administrative leave, and has not engaged in an interactive process with an employee to gain further information about her status, the firing after such approval violates the Americans with Disabilities Act and Defendant is estopped from using ambiguous after-acquired evidence.

When an employer provides no credible reason for firing an employee at the time it fires her, after it has already approved her return date, a decision-maker can infer pretext from the act of firing.  Under the precedent of *Fisher* v. *Nissan N. AM., Inc.*, —f.3d—; no. 18-5847 (ca6 feb. 27, 2020), the failure to accommodate claim shows direct evidence of discrimination, as Defendant Appellee failed to failed to engage in further interactive behavior regarding reasonable accommodation before firing Plaintiff.

## STATEMENT OF THE CASE

### A.    Procedural Posture

This case was decided in favor of the Defendant-Appellee Charter Communications at the Summary Judgment stage on January 21, 2021 by the United States District Court for the Eastern District of Kentucky (Covington) RE # 93.  The Order dismissing the case (RE # 94) on January 21, 2021 was timely appealed to Sixth Circuit Court of Appeals RE # 95.  Plaintiff-Appellant Kelly Blanchet respectfully requests that the case be remanded to the trial court with instructions to hold a trial on her claims.

### B.  Statement of the Facts

**1.  Kelly Blanchet was a very effective salesperson for Charter up to the time when she went on leave in July 11, 2016 for maternity leave, followed by PostPartum depression at the end of her leave on September 4, 2016.**

Plaintiff Blanchet started with Time Warner Communications as of July, 2014, and became a successful door to door salesman, converting cable accounts to Time Warner.  By 2016, Plaintiff Blanchet was doing very well, and had had no sick days prior to her maternity leave in July, 2016.  Blanchet Aff. para 1 RE # 74-1 PageID 1074.  Her long-time supervisor, Ryan Quigley, called her "one of my top producers" with a potential to make "a hundred grand".  Depo. Quigley, RE # 70 PageID 745 pg. 11.  Jayson Docter, another supervisor, called her "consistently his top producer."  Depo. Docter RE # 86 PageID 1157 pg 16.

Kelly was so effective that she was accused by a fellow worker of "getting sales on her knees".  Depo. Blanchet RE # 61 PageID 388 p. 25.  Plaintiff Blanchet had her son on July 11, 2016, and concluded standard maternity leave on September 4, 2016, at which point she commenced leave for postpartum depression. Blanchet Aff. para 2, RE # 74-1 PageID 1074.

**2.  Kelly Approaches her Doctor and asks for time to Prepare to Return, as her medications are not adjusted; Charter's Authorized agent, Sedgwick, approves her for leave through February 1, 2017**

While Plaintiff Blanchet's Doctor at the time, Dr. Loftus, had thought returning to work would be good for her, Plaintiff Blanchet realized that she was not ready and that medications were not properly adjusted, and her Doctor referred Plaintiff Blanchet to a psychiatrist, Dr. Annette Reynolds.  Blanchet Aff. para 3. RE # 74-1 PageID 1074.  Kelly Blanchet had indicated to Dr. Loftus in October 2016, who thought work would be good for her, that she needed to get a handle on it first; she had no problem seeing another Doctor for that prescription.  Depo. Blanchet RE # 61 PageID 436, 439 pp. 73, 76.

Kelly Blanchet was told by Charter NOT to communicate with Charter regarding her medical accommodation, but to go exclusively through Sedgwick. Depo. Blanchet RE # 61 PageID 402 P. 39; Depo. Quigley, RE # 70 PageID 747-748 pp. 13-14.  According to HR director at the time Karen Jolley, this procedure was appropriate; it was a "seamless transition" from Time Warner to Charter and

Sedgwick was the only party to be engaged in the interactive ADA discussion.
Depo. Jolley, RE # 72 Page ID 802 p. 13, PageID 814-815 pp 25-6    Dr. Annette
Reynolds put Plaintiff Blanchet on medications, and it was taking time for them to
be adjusted. Plaintiff Blanchet was in communication with Sedgwick, because it
was during a transition period when Time Warner Cable was merging with Charter
Communications to become Spectrum.  Both Ryan Quigley, Plaintiff Blanchet's
supervisor, and Karen Jolley, her human resources representative, directed Plaintiff
to speak only to Sedgwick about her leave of absence, and gave Plaintiff the phone
number.   Blanchet Aff. para 4 Doc No 74-1 PageID 1074.  Charter's Human
Resources Representative, Richard Brown, confirms that Sedgwick was authorized
to communicate with the employee on behalf of Charter.  Depo. Brown, RE # 73
PageID 900 page 11. Indeed, the letterhead of Sedgwick, by authority of Charter,
contains a representation that Sedgwick is acting on behalf of Charter; so no
separate paperwork from Charter is sent regarding authorized absences. Depo.
Brown RE # 73 PageID 902 p. 20, and Exhibit 4 RE # 73-3 PageID 917-918.
(Sedgwick letterhead bears the logo of Charter at the upper left, followed by the
logo of Sedgwick, all the addresses and phone numbers are for Sedgwick, and the
first sentence in her letters is always "Charter Communications has partnered with
Sedgwick to administer its Leave and Disability accommodation requests)."  Aff.
Blanchet Para 6.  Doc No 74-1 PageID 1074 and Ex 1 Doc No 74-2 PageID 1076.

Originally, Kelly's leave was approved through Feb 1, 2017. Depo. Blanchet, RE # 61 PageID 394-395 pp. 31-32. Sedgwick's representatives never indicated that there would be a problem with long term disability; stated that they were looking out for her job; and had a pattern of having the paperwork indicating approval follow long after the initial verbal approval. For example, the letter finally approving Plaintiff Blanchet's leave through Feb 1, 2017, was dated on February 3, 2017, the same date that she told the Sedgwick representative that she would be returning at the beginning of April, 2017. Blanchet Aff. para 6 Doc No 74-1 PageID 1074 and Ex 1 Doc No 74-2 PageID 1076.

**3.  By February 3, 2017, Kelly Blanchet has sent in paperwork indicating a return around April 1, which is coded as pending approval by Sedgwick; there is evidence that Charter's Human Resources Director verbally approves a return of April 3 twice, but does not send paperwork; Kelly is informed that her April 3 return is approved by Charter's Sedgwick representative.**

On February 3, Kelly knew that she would be returning to work around April 1 and had faxed in paperwork to that effect. Aff. Glick, RE # 62-3 PageID709 Ex. D. Per a signed Doctor's note from Annette Reynolds, received by the Sedgwick, the expected return to work date was April, 2017, which was reflected as "pending to approval". Aff. Glick, RE # 62-3 PageID708 Ex. D.

When Plaintiff Blanchet discussed the matter with the Sedgwick representative of Charter on February 3, 2017, she was greatly concerned about her job, and told the representative that her FLMA was only 12 weeks. The

representative told Plaintiff Blanchet not to worry; that the ADA was separate and was Plaintiff's job protection and that the representative knew of no reason this application would not be approved. Blanchet Aff. para 7 RE # 74-1 PageID 1074.[1] Moreover, as of Feb 3, 2017 despite the fact that Long term disability was supposed to start on January 9, 2017 Kelly was okay to stay on to Feb 3 without doing anything about it. Depo. Jolley RE # 72 PageID 841 p. 52.

On February 15, 2017, Sedgwick had confirmed that Dr. Reynolds had given a "return to work" date of April 3, 2017, and was requesting a short ADA extension from February 2, 2017-April 3 from HR, who asked, in return, if Kelly was still on short term disability. Aff. Glick, RE # 62-3 PageID707 Ex. D. Such an accommodation of time past a supposed termination date was, in fact, reasonable for Sedgwick to offer; even a 60 day extension would have been possible, according to a Charter senior Human Resources representative. Depo. Jolley, RE # 72 PageID 824 p. 35.

Oddly enough, on February 22, 2017, Charter apparently communicated to Sedgwick (but not to Kelly) that Blanchet had been terminated while on approved leave; see Glick Aff. RE # 62-3 PageID707, Ex. D. "I have a request for leave of

---

[1] The Court's Opinion RE # 93 notes on Page 3 (Page ID#1197) that Sedgwick keeps detailed notes but does not mention these calls confirming no problem with an approval; but omits the fact that no one from Sedgwick testified concerning the completeness or detail of their recordkeeping on informal update calls.

absence pending from 02/02/...However, I received notice of termination as of 01/09/2017, please review the employee's status and confirm?".

By March 2, 2017, Sedgwick was still seeking a response from Charter HR "that had been due March 1" and was asking to "escalate it". Aff. Glick RE # 62-3 PageID 706 Ex D. Eventually, by March 10, Frederic Contreras, the HR manager, states to Sedgwick Representative that he "has responded twice to the request for extension before and it "is ok with us". Glick Aff., RE # 62-3 PageID705 Ex. D. Within the next few weeks, Plaintiff Blanchet called up Sedgwick, because she had not yet received a letter; Plaintiff Blanchet called Sedgwick and believes she spoke to Devoc, who told her that all was ok, that they had been in communication with Charter and the new HR representative, Mr, Frederic Contreras, and that Plaintiff Blanchet would shortly be receiving her approval letter for April 3, 2017. Blanchet Aff. para 8 RE #74-1 PageID 1075.

She is certain of this communication, because of her subsequent reaction to the "Notice of Firing". Aff. Blanchet para. 10, RE # 74-1 PageID 1075.

**4. By March 9, 2017, Kelly Blanchet is looking forward to returning to work: She has made major breakthroughs, her husband is supporting her, her medication has allowed her to go out, and she is looking forward to a return to work, and she does not seek further extensions.**

By March of 2017, Kelly had decided that she was able to work and was looking forward to getting back to work. Depo. Blanchet RE # 61 PageID 396, p. 33. She considered it a goal, and she "had to have goals". Depo. Blanchet RE #

61, PageID 445-6 pg. 82-83.  She was certain she could have returned to the same job.  Depo. Blanchet RE # 61 PageID 453, p.90.

When Kelly Blanchet spoke to Sedgwick in February, 2017, she was told she was approved for ADA accommodation...and Long Term Disability was something separate.  Depo. Blanchet RE # 61 PageID387-388, pg 24-25.  In keeping with that understanding, she also told her Sedgwick supervisor, Mr. Walkenhorst, in late February or early March, that she would be returning to work in a few weeks.  Depo. Blanchet, RE # 61 PageID 401, p. 38.  Kelly Blanchet's understanding was that she was approved until April 3, and was working on getting herself back to work. Depo. Blanchet, RE # 61 PageID409, p. 46.  In the past, when Kelly Blanchet had not felt ready, she had always asked her Doctor for an extension; however, this time, on March 9, 2017, when talking to her doctor, knowing she would soon be returning to work, she did not seek an extension. Depo. Blanchet RE # 61 PageID 420 p. 57.

On March 9, 2017, Plaintiff Blanchet went to see her psychiatrist for a scheduled appointment.  Upon reviewing the notes, which were not shown to her until her deposition, she recollects many reasons why she was preparing to return to work and believed she would return to work.  The first was that Plaintiff Blanchet was able to go out and go to the store, as her medication (ATV) had enabled it.  The second was that Plaintiff Blanchet finally felt loved and validated

by her husband, after having shared with him the details of an incident 2 weeks before.  The third is that Plaintiff Blanchet wanted (and needed) out of the house, where we were living with her Mother, his brother, and his sister, and was looking forward to doing so in about three weeks.  Blanchet Aff. para 9 RE # 74-1 PageID 1075 and Ex. 2 RE # 74-3 PageID 1077.[2]

Plaintiff Blanchet was certain that she would be getting her approval letter (late, as had happened before), based upon Sedgwick's affirmation to her that it would be forthcoming; instead, right after Plaintiff Blanchet's March 9, 2017 appointment, she received the letter firing her.  No one from Charter had called Plaintiff Blanchet to discuss her situation; no one from Sedgwick ever indicated a problem with her request, indeed, Plaintiff Blanchet subsequently, after her devastating firing, received a notice that her leave extension had been approved, showing her that the request was reasonable in the first place.  Blanchet Aff. para 10 RE # 74-1 PageID 1075.

**5.   In spite of their former verbal approval, and while, even by Charter's version Kelly's request for approval of an April 3, 2017 date, approved by her doctor, is pending, Charter, without engaging in any interactive dialogue with Kelly Blanchet Concerning the Return, sends a "Notice of Firing" on March 9, 2017, which is devastating to her.**

---

[2]   None of the Doctor's notes referenced by the Defendant-Appellee MSJ RE # 62-1 PageID 610-634 or the Court's Memorandum Opinion and Order RE# 93 PageID 1195-1207 in its decision were in Charter's possession at the time they sent the letter firing her; they were uncovered subsequently through discovery.

Sedgwick, Charter's agent, had also indicated to her that she was approved to return to work on April 3, 2017, so she was confused, hurt, angry and crushed when she received a letter saying she was fired in a Mid March, 2017 letter. Depo. Blanchet RE # 61 PageID 398 and 432, p. 35 and 69. At no time while her request was pending had Charter informed her of a possible termination if she went on long term disability, or even discussed the matter with her. Blanchet Aff. at para 9 RE # 74-1 PageID 1075. Subsequent to her firing, on April 12, 2017, Charter approved her leave extension and *sent Kelly Blanchet a letter* telling her it was approved. Aff. Glick, RE # 62-3 Page ID 704-705 Exhibit D, Depo. Blanchet RE # 61 PageID 483 p. 120.

**SUMMARY OF THE ARGUMENT**

The lower court erred in two ways. First, the Court applied burden-shifting analysis instead of direct evidence analysis on a failure to accommodate claim. In February, 2020, this Court looked at the ADA statute and concluded that direct evidence inherently applied to failure to accommodate claims. Under direct analysis, the Defendant-Appellee essentially admitted that Kelly Blanchet was a qualified individual with a disability by approving her extension through April 3, 2017 through their authorized third party administrator, and then failing to engage in further interactive discussion before firing her (whether by mistake or design) and failing to immediately correct their error.

The second error of the lower court was in weighing the evidence and concluding that a decision to fire Blanchet was made in March, when it is equally or more plausible that a decision to extend her employment through April 3, 2017 based on the Doctor's note had already been made, and the Human Resources manager (not just "an employee" as stated by the Court) had indicated in writing that he had confirmed approval of the extension before the firing, and the Employee testified that the Third Party Administrator had confirmed that there was no reason that the approval would not be made.  Thus, even under the burden-shifting analysis applied by the Court, the case should go to trial.  These arguments are addressed in reverse order.  The relief requested is that the case should be remanded to the lower Court with instructions to OVERRULE the Motion for Summary Judgment filed by the Defendant and to allow the case to proceed to trial.

### STANDARD OF REVIEW FOR ALL SECTIONS OF THE BRIEF

This Honorable Court reviews the granting of a summary judgment de novo. ***Bentkowski v. Scene Magazine***, 637 F.3d 689, 693 (6th Cir. 2011). All sections of the brief and argument should therefore be reviewed de novo.

**ARGUMENT**

**A.  Assignment of Error**

**First Assignment of Error**

THE TRIAL COURT ERRED, TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT, BY WEIGHING THE EVIDENCE AND CONCLUDING THAT CHARTER'S IN-HOUSE HUMAN RESOURCES MANAGER WAS INCAPABLE OF EXTENDING KELLY BLANCHET'S EMPLOYMENT FOR THREE WEEKS, AS HAD BEEN PROMISED ON BEHALF OF CHARTER BY DEFENDANT-APPELLEE'S THIRD PARTY ADMINISTRATOR, AND THAT INSTEAD HER OSTENSIBLE FIRING BY CHARTER AND A SUBSEQUENT LETTER SENT IMMEDIATELY THEREAFTER CONFIRMING HER RETURN TO WORK IN THREE WEEKS WAS SIMPLY AN "INEXPLICABLE" MISTAKE.

**Issue Presented for Review and Argument**

**1.  A Trial Court Must, in evaluating a Motion for Summary Judgment, Make all Reasonable Inferences Consistent with the Evidence in Favor of the Nonmoving Party And Refrain from Weighing Evidence to reach its Conclusions**.

A Court evaluating a Motion for Summary Judgment "must view facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party." ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp***., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). At the summary judgment stage, a Court does not "weigh evidence, assess credibility of witnesses, or determine the truth of matters in dispute". ***Anderson v. Liberty Lobby, Inc***., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**2.  A Reasonable Inference is That Kelly Blanchet's Firing Was An Administrative And Rescindable Error That Violated the Americans With Disabilities Act And That She Should Have Been Permitted To Return to Work, as Promised by Charter's Human Resources Manager Through Its Third Party Administrator**

The lower Court offered in its opinion RE # 93 PageID 1195-1207 that "the decision to terminate [Kelly Blanchet's] employment was made in early March." Court Opinion RE # 93 p. 7, Page ID 1201.  The problem with this assertion is that it contradicts the evidence in the record that the Human Resources Manager (not just an "employee") had, prior to that time, already agreed to a short extension of her employment, until April 3, 2019.  Moreover, in addition to confirmation from Kelly's contact with Sedgewick (in which the third party administrator indicated no reason that it should not be approved) the human resources manager himself confirmed that he had approved the extension.  Although the record of the statement is after the "firing", it confirms that the conversation is the third time that the Human Resources Manager has confirmed that the extension was approved. The logical inference is that the firing itself was the error, and it is an error that discriminated against an individual with a disability, as clearly the approval of the extension would eliminate a legitimate firing absent a change in circumstances.

Thus, the lower Court erred by "weighing" the evidence and selecting one conclusion—the one that favored Defendant—over the conclusion that favored Plaintiff.

**3.    When an Employer does not possess Medical Records, Has already indicated that it will approve a Short Extension of Administrative Leave, and has Not engaged in an Interactive Process with An Employee to Gain Further Information about her status, the Firing After such Approval Violates the Americans With Disabilities Act and Defendant is Estopped From Using Ambiguous After-Acquired evidence.**

The question is not, as the Court seems to think, whether Kelly Blanchet's subjective evaluation is that could she do her job on March 9, but whether she was qualified to do it with reasonable accommodation already approved by the employer, that is, an extension of leave until April 3. Not only had Kelly done the job before; she had done it as a top producer under two separate supervisors. In the past, when she did not feel ready to return, she had asked for an extension.  This time, she did not seek an extension.  This time, she had been assured by Sedgwick, Charter's authorized agent, that her request for an extension to April 3 was reasonable and would be routinely approved.

Under these circumstances, having already designated Sedgwick as their agent, and having declared, through Sedgwick, that the authorization was reasonable, Charter is estopped from claiming, based on after-acquired (and ambiguous) evidence that Kelly Blanchet was not qualified for the job.

That is, having designated Sedgwick as its agent to do the negotiations, and all the "interactive conversation" required under the ADA, once Sedgwick had recommended and signed off on the extension to April 3, and having ceded its obligation to engage in interactive discussion with Kelly Blanchet, Charter has lost its right to suddenly claim she was unqualified for her position.

In ***Hicks v. Combs***, 311 Ky. 149, 152, 223 S.W.2d 379, 381, 11 A.L.R.2d 1393, the Court said:

'The doctrine of equitable estoppel is applied to transactions in which it would be unconscionable to permit a person to maintain a position which is inconsistent with one in which he has acquiesced. *Simpson v. Yocum*, 172 Ky. 449, 189 S.W. 439. A party may be estopped to insist upon a claim or take a position which is inconsistent with an admission or denial of a fact which he has previously made or with a course of conduct in reliance upon which the other party changed his position to his detriment or prejudice... Where one accepts and retains benefits of a transaction or of an instrument which he was not required to take, an estoppel operates to prevent the party that benefited from questioning the validity of the transaction or basis of it.'

That is, having accepted the benefit of having an agent do its negotiations and engage in the interactive process on its behalf, and having ceded its right to engage in the interactive process and make its own determination regarding Blanchet's qualifications, once Sedgwick signed off on the extension as a reasonable qualification, Charter is now estopped from a hindsight challenge on Sedgwick's judgment that Kelly was qualified for her position with a reasonable accommodation.

In **Walsh v. United Parcel Service***, 201 F.3d 718, 727 the Court noted a case in which

> ...plaintiff had just taken a roughly eight week leave of absence for treatment of her Psoriasis. At the end of this period, plaintiff's physician determined that another months treatment was needed, and estimated that plaintiff could return to work on a part time basis by March 1, 1994. Id. at 778. The defendant ostensibly denied the request because the plaintiff had not properly filled out the required paperwork. Observing that the defendant had allowed other employees to take medical leave under similar circumstances, the court found that a genuine issue of fact existed as to whether the

> granting of further medical leave would unduly burden the defendant,
> or would have constituted a reasonable accommodation to the plaintiff
> *Id., Walsh* 201 F.3d 718 at 726.

Here, the approved request was for only 3.5 weeks, a reasonable accommodation—

and one that Defendant failed to make, after first agreeing to make it.

Defendant-Appellee claimed that there was a "gap" to allow "ample

opportunity" for Plaintiff to "furnish more medical evidence" that Plaintiff would

recover by April 3, and cites Aff. Glick RE # 62-3 PageID 706-707 Exhibit D,

intimating that had Plaintiff "furnished evidence" it would have been "considered".

Sedgwick, on these pages, shows no indication that it *asked* for more

medical evidence, or even brought the subject up.  Indeed, Sedgwick actually did

the opposite; it told Blanchet, at first, that there was no reason that the extension

would not be approved, and then that it had been approved, which is consistent

with the H.R. Manager having told Sedgwick on March 10 that "the extension was

ok" and that he had responded "twice before". Aff. Glick RE # 62-3 PageID705

Exhibit D.

In fact, in all the interaction between Mr. Contreras, the HR manager at

Charter, and Sedgwick, in its system, throughout January, February, and March,

Contreras never once asks "is she qualified to return?"  He never once asks, "could

you have her Doctor furnish more information about her qualifications to return?".

The fact that Charter approved the leave through Feb 1, 2017 even though Kelly

was supposedly going on Long Term Disability past her six month date on January 9, 2017[3], coupled with the admission of Karen Jolley that a return to work within 60 days can be a reasonable accommodation, shows that Charter had ceded the ability to Sedgwick to determine what information was needed.  Its revisionist hindsight that it could have sought more information does not avail it in a case where it failed to do so.

Plaintiff's request for approval of leave through April 3, 2017 is *precisely* a statement of when Plaintiff will return.  Defendant's allegation that "Plaintiff does not dispute this" assertion is supposedly in Blanchet Depo. RE # 61 PageID 408 at pg. 45 lines 18-20. However, what she actually says, in answer to the question "On March 9, 2017, you could not work at Charter, correct?" is "I was not approved to go back to work, yes," meaning simply that she was, as of March 9, 2017 unapproved to go back to work.  Blanchet Depo RE # 61 PageID409 pg. 46.  The dubious support of that ambiguous response for Defendant's position, moreover, is undermined a mere two lines earlier, where Ms. Blanchet notes:  "I was approved [on leave] until April 3, but was working on getting myself back to work." Id.

**4.    When an Employer Provides No Credible Reason For Firing an Employee at the Time it fires her, After it has Already Approved her Return Date, A Decision-maker can infer Pretext from the Act of Firing.**

---

[3]  This date is somewhat skewed by the fact that the first three months of her leave was simple maternity leave afforded to all new mothers.

Pretext is demonstrated by any of the following: 1) showing that the proffered reason has no basis in fact, (2) showing that the reason did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." ***Dews v. A.B. Dick Co***, 231 F.3d 1016, 1021 (6th Cir. 2000).

In this case, the granting of the extension as a reasonable accommodation, which predated the firing, itself demonstrates that the reason for the firing (which is unclear) did not actually motivate the firing.

**Second Assignment of Error (In the Alternative)**

THE LOWER COURT ERRED, TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT, BY APPLYING BURDEN-SHIFTING ANALYSIS WHEN THE DIRECT EVIDENCE TEST SHOULD HAVE BEEN APPLIED ON THE FAILURE TO ACCOMMODATE CLAIM.

**1.     Under the precedent of *Fisher* v. *Nissan N. Am., Inc.*, —F.3d—; No. 18-5847 (CA6 Feb. 27, 2020), the Failure to Accommodate Claim shows Direct Evidence of Discrimination, as Defendant Appellee failed to engage in further interactive behavior regarding reasonable accommodation before firing Plaintiff.**

The trial Court used the McDonnell Douglas shifting analysis in evaluating the failure to accommodate claim.  However, under the established precedent of this Court after analyzing the statute, the direct evidence test applies, and the failure to engage in interactive dialogue itself gives rise to direct evidence of discrimination.  As this Court notes in ***Fisher v. Nissan N. Amer, Inc.,* —F.3d—; No. 18-5847 (CA6 Feb. 27, 2020)**, *"*Because failure to accommodate is listed in the Act's definition of disability discrimination, see 42 U.S.C. §

12112(b)(5)(A), 'claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination. . . . [I]f the fact-finder accepts the employee's version of the facts, no inference is necessary to conclude that the employee has proven this form of discrimination,'" quoting *Kleiber v. Honda of N. Amer. Mfg,* 485 F.3d 862, 868. This decision clarified that, between two conflicting lines of cases, that in a failure to accommodate claim, that the claim itself can serve as direct evidence of discrimination.  Thus, the Court's failure to use the direct evidence analysis is plain error.

 **2.  When the direct evidence test is applied, because Charter fired the Plaintiff after an initial approval of her requested accommodation as reasonable without engaging in an interactive dialogue and informing her of the contemplated firing, the employer violated the Americans with Disabilities Act**

While it seems practically axiomatic to point out, the main distinction between the instant case and the *Fisher* case  is that the Plaintiff in that case was afforded the opportunity for an interactive dialogue.  He offered three accommodations, and the employer fired him without considering them.

Here, the firing of Kelly Blanchet absent interactive dialogue concerning her ability to return itself serves as direct evidence sufficient to survive summary judgment.  For, if failure to consider proposed accommodations is sufficient in *Fisher,* it logically is similarly sufficient here, where the employer at first, through

its human resources manager, had approved an accommodation,[4] and then fired the Plaintiff without further notice or effort.

It is anticipated that Defendant-Appellee will argue that Plaintiff was not a "qualified individual with a disability"[5] based upon the self-same after-acquired evidence that it misconstrued at the lower level.  It may also argue that the long gap between her firing and her resuming work should be held against her. Neither of these arguments should avail.

The first argument requires weighing evidence.  The medical record has positive indicia on March 9 pointing to the conclusion that Kelly Blanchet would indeed have been able to return on April 3, as she believed.  And short extensions of time for recovery have been ruled, on numerous occasions, to be reasonable.

The underpinnings of the ADA and direct evidence would be completely abrogated if an employer could speculate after the fact that an employee was not

---

[4]  Kelly Blanchet is clearly entitled to the inference that the accommodation to April 3, 2017 was initially approved.  Not only did she receive assurances from the Third Party Administrator's representative that there was no reason it should not be approved; the Human Resources manager himself confirmed to Sedgwick that he approved it ("it's ok with us"), and had done so twice before. To interpret the evidence any other way is to weigh it and construe it against the Plaintiff, impermissible at this stage. While the Defendant is free to argue to the jury the significance of the lack of clear evidence in Sedgwick's record, it is, in fact, an argument to be weighed by the jury, not an established fact.

[5]  Although it clearly was regarding her as one at the time, based on the Third Party Administrator dialogue and the initial approval of the Human Resources Manager.

qualified at the time of their decision (even though said fact was unknown) and use it to justify their discriminatory animus.

Nor is the long gap relevant, given that rather than returning to work and getting her feet on the ground, as she anticipated, Kelly Blanchet was unceremoniously and unexpectedly fired by Charter after being told her leave extension was no problem, sending her into an immediate and altogether predictable tailspin.  The case is akin to the Heisenberg uncertainty principle; the long gap was clearly affected by the employer's inexplicable (and meretricious) conduct, and it would work a great injustice, indeed, to give the employer a pass based on Kelly's subsequent history (given her now complete recovery).  Because it was Charter's wrongful and discriminatory act of firing after Sedgewick indicated "no problem" and the Human Resources manager approved the leave, coupled with the ridiculously insensitive situation of sending an immediate letter confirming her medical extension was approved, the gap before her next employment was, when evidence is construed in her favor, created by Charter, who should not get the advantage of using a situation created by their own conduct. See, e.g., ***Jones v. Nissan North America***,  (Case No. 09-5786)(Sixth Circuit, 2011)(reversing and remanding a case dismissed by the trial court on the after-acquired evidence doctrine using proximate cause analysis when the employer's conduct contributed to the Plaintiff's conduct, interpreting ***McKennon v. Nashville***

***Banner Publishing Co.***, 513 U.S. 352 (1995).                     ,

## CONCLUSION

For the reasons explained above, this Court should reverse the Trial Court's grant of summary judgment to Defendant Charter Communications and REMAND to the trial Court for trial on the issues of Disability Discrimination in violation of the Americans with Disabilities Act.

Respectfully submitted,

***/s/ Robert F. Croskery***
Robert F. Croskery (0064802)
Attorney for Plaintiff/Appellant
Croskery Law Offices
 3905 Eastern Ave., Suite 200
Cincinnati, OH 45226
Phone:  (513) 232-LAWS (5297)
Fax: (513) 426-7372
rcroskery@croskerylaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2021, a copy of the foregoing was served by the Court's electronic filing system, email and regular mail to:

C. Celeste Creswell, Esq.,
Kabat Chapman and Ozmer LLP
171 17th St. NW, Site 1550
Atlanta, GA  30363
Attorney for Defendant-Appellee

***/s/ Robert F. Croskery***
Robert F. Croskery (0064802)

22

# ADDENDUM

District Court's Memorandum Opinion and Order dated January 14, 2021
RE # 93 PageID 1195-1207

Judgment dated January 14, 2021 RE # 94 PageID 1208

Plaintiff's Notice of Appeal of Memorandum Opinion and Order and Judgment
RE # 95 PageID 1209-1210

Affidavit of Kelly Blanchet paragraph 1 RE # 74-1 PageID 1074

Deposition of Ryan Quigley pg. 11 RE # 70 PageID 745

Deposition of Jayson Docter pg. 16 RE # 86 PageID 1157

Deposition of Kelly Blanchet pg. 25 RE # 61 PageID 388

Affidavit of Kelly Blanchet paragraph 2 RE # 74-1 PageID 1074

Affidavit of Kelly Blanchet paragraph 3 RE # 74-1 PageID 1074

Deposition of Kelly Blanchet pg. 73, 76 RE # 61 PageID 436, 439

Deposition of Kelly Blanchet pg. 39 RE # 61 PageID 402

Deposition of Ryan Quigley pg. 13-14 RE # 70 PageID 747-748

Deposition of Karen Jolley pg. 13, 25-26 RE # 70 PageID 747-748

Affidavit of Kelly Blanchet paragraph 4 RE # 74-1 PageID 1074

Deposition of Richard Brown pg. 11 RE # 73 PageID 900

Deposition of Richard Brown pg. 20 RE # 73 PageID 902

Deposition of Richard Brown Exhibit 4 pgs 1-2 RE # 73-3 PageID 917-918

Affidavit of Kelly Blanchet paragraph 6 RE # 74-1 PageID 1074

Affidavit of Kelly Blanchet Exhibit 1 RE # 74-2 PageID 1076

Deposition of Kelly Blanchet pg. 31-32 RE # 61 PageID 394-395

Affidavit of Kelly Blanchet paragraph 6 RE # 74-1 PageID 1074

Affidavit of Kelly Blanchet Exhibit 1 RE # 74-2 PageID 1076

Declaration of Shaun Glick Exhibit D RE # 62-3 PageID 709

Declaration of Shaun Glick Exhibit D RE # 62-3 PageID 708

Affidavit of Kelly Blanchet paragraph 6 RE # 74-1 PageID 1074

Deposition of Karen Jolley pg. 52 RE # 72 PageID 841

Declaration of Shaun Glick Exhibit D RE # 62-3 PageID 707

Deposition of Karen Jolley pg. 35 RE # 72 PageID 824

Declaration of Shaun Glick Exhibit D RE # 62-3 PageID 707

District Court's Memorandum Opinion and Order dated January 14, 2021 pg. 3 RE # 93 PageID 1197

Declaration of Shaun Glick Exhibit D RE # 62-3 PageID 706

Declaration of Shaun Glick Exhibit D RE # 62-3 PageID 705

Affidavit of Kelly Blanchet paragraph 8 RE # 74-1 PageID 1075

Affidavit of Kelly Blanchet paragraph 10 RE # 74-1 PageID 1075

Deposition of Kelly Blanchet pg. 33 RE # 61 PageID 396

Deposition of Kelly Blanchet pgs. 82-83 RE # 61 PageID 445-446

Deposition of Kelly Blanchet pg. 90 RE # 61 PageID 453

Deposition of Kelly Blanchet pg. 24-25 RE # 61 PageID 387-388

Deposition of Kelly Blanchet pg. 38 RE # 61 PageID 401

Deposition of Kelly Blanchet pg. 46 RE # 61 PageID 409

Deposition of Kelly Blanchet pg. 57 RE # 61 PageID 420

Affidavit of Kelly Blanchet paragraph 9 RE # 74-1 PageID 1075

Affidavit of Kelly Blanchet Exhibit 2 RE # 74-3 PageID 1077

Affidavit of Kelly Blanchet paragraph 10 RE # 74-1 PageID 1075

Defendant's Memorandum of Law in Support of Defendant's Motion for Summary
Judgment dated March 6, 2020 RE # 62-1 PageID 610-634

District Court's Memorandum Opinion and Order dated January 14, 2021
RE # 93 PageID 1195-1207

Deposition of Kelly Blanchet pg. 38 RE # 61 PageID 401

Affidavit of Kelly Blanchet paragraph 9 RE # 74-1 PageID 1075

Deposition of Kelly Blanchet pg. 35 and 69 RE # 61 PageID 398 and 432

Declaration of Shaun Glick Exhibit D RE # 62-3 PageID 704-705

Deposition of Kelly Blanchet pg. 120 RE # 61 PageID 483

District Court's Memorandum Opinion and Order dated January 14, 2021
RE # 93 PageID 1195-1207

District Court's Memorandum Opinion and Order dated January 14, 2021 pg. 7
RE # 93 PageID 1201

Declaration of Shaun Glick Exhibit D RE # 62-3 PageID 706-707

Declaration of Shaun Glick Exhibit D RE # 62-3 PageID 705

Deposition of Kelly Blanchet pg. 45 lines 18-20 RE # 61 PageID 408

Deposition of Kelly Blanchet pg. 46 RE # 61 PageID 409

# APPENDIX

RE # 93  Trial Court's Opinion, Decision, and Entry Granting
        Motion for Summary Judgment dated January 14, 2021

RE # 94  Judgment dated January 14, 2021