# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

KELLY BLANCHET,

Plaintiff-Appellant,

v.

CHARTER COMMUNICATIONS, LLC,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Kentucky
No. 2:18-cv-00188 (WOB-CJS)
The Honorable Judge William O. Bertelsman

## APPELLEE'S PETITION FOR REHEARING EN BANC

KABAT CHAPMAN & OZMER LLP
C. Celeste Creswell
171 17th St. NW, Suite 1550
Atlanta, Georgia 30363
Tel: (404) 400-7300
ccreswell@kcozlaw.com

*Counsel for Defendant-Appellee Charter Communications, LLC*

# DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

**(1)  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:**

Yes; Charter Communications, LLC is an indirect subsidiary of Charter Communications, Inc.

**(2)  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:**

Yes; (1) Charter Communications, Inc.; and (2) Liberty Broadband Corporation, which publicly-available information indicates owns 10% or more of Charter Communications, Inc's stock.

Respectfully submitted this 22nd day of March, 2022.

*/s/ C. Celeste Creswell*
C. Celeste Creswell
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
Tel: (404) 400-7300
ccreswell@kcozlaw.com

*Counsel for Defendant-Appellee Charter Communications, LLC*

# TABLE OF CONTENTS

Rule 35(b) Statement and Introduction.......................................................................1

Statement of the Case.............................................................................................4

   I.  Blanchet's Employment and Administrative Termination............................4

      A.  Blanchet Exhausts Her FMLA and STD Benefits ...................................4

      B.  Charter Provides Blanchet with a Seventh Period of Leave (or Sixth Extension), Even After Exhaustion of STD and Transition to LTD........5

      C.  Blanchet Cannot Provide a Reasonably Certain Return-to-Work Date, and Charter Terminates Her Employment ...............................................6

      D.  After Sending the Termination Letter, Contreras Mistakenly Emails "Ok" Late on Friday Evening...................................................................7

      E.  Blanchet's Medical Conditions Extend Well Beyond March 2017, and She Does Not Return to Work Until 2019 .............................................8

   II. Pertinent Procedural History ........................................................................8

      A.  The District Court Granted Summary Judgment in Favor of Charter......8

      B.  The Panel Reverses and Remands in a 2-1 Decision ..............................9

REASONS FOR GRANTING THE PETITION....................................................10

CONCLUSION.....................................................................................................16

CERTIFICATE OF COMPLIANCE....................................................................17

CERTIFICATE OF SERVICE .............................................................................18

ADDENDUM .......................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aston v. Tapco Int'l Corp.*,
  631 F. App'x 292 (6th Cir. 2015) ..............................................................10, 11

*Blanchet v. Charter Commc'ns, LLC*,
  2022 WL 682540 (6th Cir. Mar. 8, 2022) .....................................*passim*

*Bratten v. SSI Servs.*,
  185 F.3d 625 (6th Cir. 1999) ..........................................................3, 14

*Cehrs v. Ne. Ohio Alzheimer's Rsch. Ctr.*,
  155 F.3d 775 (6th Cir. 1998) ....................................................3, 12, 13

*Cooley v. E. Tenn. Hum. Res. Agency, Inc.*,
  720 Fed. App'x 734 (6th Cir. 2017) ............................................10, 11

*Cotuna v. Wal-Mart Stores, Inc.*,
  2017 WL 5171247 (6th Cir. Aug. 31, 2017) ......................................11

*Hedrick v. W. Reserve Care Sys.*,
  355 F.3d 444 (6th Cir. 2004) ..........................................................3, 14

*Lewis v. Humboldt Acquisition Corp.*,
  681 F.3d 312 (6th Cir. 2012) ......................................................12, 13

*Maat v. Cnty. of Ottowa, Mich.*,
  657 F. App'x 404 (6th Cir. 2016) ................................................10, 11

*Monette v. Elec. Data Sys. Corp.*,
  90 F.3d 1173 (6th Cir. 1996) ......................................................12, 13

*Norris v. Allied-Sysco Food Servs.*,
  948 F. Supp. 1418 (N.D. Cal. 1996)............................................12, 13

*U.S. Airways, Inc. v. Barnett*,
  535 U.S. 391 (2002)........................................................................3, 14

*Walsh v. United Parcel Serv.*,
   201 F.3d 718 (6th Cir. 2000) ........................................................................*passim*

*Williams v. AT&T Mobility Servs. LLC*,
   847 F.3d 384 (6th Cir. 2017) ........................................................................*passim*

**Statutes**

42 U.S.C. § 12111 ...........................................................................................4

**Rules**

Fed. R. App. P. 32 ...........................................................................................17

Fed. R. App. P. 35 ...........................................................................................1

## RULE 35(B) STATEMENT AND INTRODUCTION

The Majority opinion[1] conflicts with U.S. Supreme Court and Sixth Circuit precedent and will cause significant confusion among employers and lower courts regarding whether an employer must keep an employee's job open indefinitely even if the employer has already provided substantial periods of medical leave (here, seven months) but the employee has demonstrated no clear prospect of recovery that will permit her return to work. "[C]onsideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions." Fed. R. App. P. 35(b)(1)(A).

To have standing under the Americans with Disabilities Act ("ADA"), a disabled employee claiming need of an accommodation to perform the essential functions of her job must demonstrate the proposed accommodation is objectively reasonable. Regarding medical leave as an accommodation, this Court's straightforward caselaw holds that the ADA does not require an employer to "keep an employee's job open indefinitely" and that "additional leave is an objectively unreasonable accommodation where an employee has already received significant amounts of leave and has demonstrated 'no clear prospects for recovery.'" *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 394 (6th Cir. 2017) (quoting *Walsh v.*

---

[1] *Blanchet v. Charter Commc'ns, LLC*, No. 21-5073, 2022 WL 682540 (6th Cir. Mar. 8, 2022) ("Slip Op."). The opinion is attached as an addendum, and this Petition references pages 1-12 of the opinion as the "Majority" and page 13 as the "Dissent."

*United Parcel Serv.*, 201 F.3d 718, 727 (6th Cir. 2000)).

As Judge Kethledge's dissent recognizes, the district court faithfully applied these precedents in dismissing Blanchet's ADA claim, because "Charter had already extended [her] leave five times" for a total of "seven months of paid disability leave," and "neither she nor her doctor made any effort to demonstrate that a sixth extension would 'remedy her condition'" such that she could return to work. Slip Op. at 13 (Dissent). In fact, Blanchet had applied and been approved for long-term disability benefits, which necessarily meant that she could not return to work or perform her job duties in the reasonably foreseeable future.

Ignoring the "objectively unreasonable" holding of *Walsh* and *Williams* in favor of reasoning from a Northern District of California trial court decision, the Panel Majority erroneously reversed, relying on the California trial court's purported holding that "since [an] employee's leave would not unduly burden the employer, summary judgment was improper." Slip Op. at 10 (citing *Norris v. Allied-Sysco Food Servs.*, 948 F. Supp. 1418, 1439 (N.D. Cal. 1996)). This reasoning could be misinterpreted to upend bedrock ADA standing jurisprudence. It conflicts with longstanding U.S. Supreme Court and Sixth Circuit precedent holding that "whether a requested accommodation is reasonable and whether it unduly burdens the employer are separate inquiries," and "the disabled individual has the initial and separate burden of showing a proposed accommodation is objectively reasonable."

*Walsh*, 201 F.3d at 726 n.3; *accord U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452–53 (6th Cir. 2004); *Bratten v. SSI Servs.*, 185 F.3d 625, 635 (6th Cir. 1999).

Further straying from precedent and purporting to cloud settled issues, the Majority depends on a misreading of *Cehrs v. Ne. Ohio Alzheimer's Rsch. Ctr.*, 155 F.3d 775 (6th Cir. 1998). *Cehrs* did not address whether additional leave with no clear prospect of recovery is objectively unreasonable; it reversed the district court's presumption that a medical leave of absence can never be a reasonable accommodation because uninterrupted attendance is an essential job requirement. *Id.* at 782. The holding of *Cehrs* is simply that "a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances," which is not a disputed issue in this case. *Id.* *Williams* and *Walsh*, in contrast, address the precise circumstances presented here and hold the proposed accommodation (further extension of substantial leave with no demonstration of a clear prospect of recovery) is objectively unreasonable as a matter of law. To avoid confusion regarding the meaning of *Cehrs* and to secure and maintain uniformity of the Court's decisions and consistency with binding Supreme Court precedent, the Court should rehear this case en banc, apply *Williams* and *Walsh,* and affirm the district court's order.

## STATEMENT OF THE CASE

This case turns on whether Blanchet was a "qualified individual" under the ADA. An employee is only qualified if she can perform all the essential functions of her job, with or without a *reasonable* accommodation. 42 U.S.C. § 12111(8). There is no dispute that, at the time of Blanchet's termination, she was unable to perform the essential functions of her job. Slip Op. at 7. Thus, the only question is whether the accommodation she requested was reasonable. *Id.*

## I. Blanchet's Employment and Administrative Termination

### A. Blanchet Exhausts Her FMLA and STD Benefits

During her employment, Blanchet became pregnant and anticipated needing time off due to the birth of her child. At this time, Sedgwick Claims Management Services ("Sedgwick") served as Charter's third-party leave administrator, meaning Sedgwick communicated directly with employees who requested leaves of absence, acting as the liaison between the employee and Charter management and human resources.

Blanchet then applied and was approved for short-term disability ("STD") benefits and FMLA benefits from July 11 to September 4, 2016. (Glick Declaration, RE 62-3, Page ID # 682–83, 694; Blanchet Transcript, RE 61, Page ID # 392–93, 451, at 29:24–30:3, 88:8–10.) Blanchet did not return to work on September 4, however, because she developed post-partum depression, among other symptoms.

Blanchet sought treatment from a psychiatrist, Dr. Annette Reynolds, who opined that Blanchet was unable to work due to her various mental health symptoms. (*Id.* at Page ID # 394, at 31:5–23; Amended Complaint, RE 22, Page ID # 82.) Willing to accommodate Blanchet's conditions and allow her sufficient time to recover and seek treatment, Charter approved six leave extensions under the FMLA and STD policy beyond her original return date of September 4, 2016.

### B. Charter Provides Blanchet with a Seventh Period of Leave (or Sixth Extension), Even After Exhaustion of STD and Transition to LTD

Once Blanchet exhausted STD, she applied and was approved for long-term disability ("LTD"), effective January 9, 2017. (Brown Declaration, RE 62-2, Page ID # 637–38.) To qualify for LTD benefits, Blanchet necessarily had to represent that she was "disabled" under the LTD policy and therefore could not return to work or perform her job duties. (*Id.*; Blanchet Transcript, RE 61, Page ID # 452–53, at 88:11–89:4.) Charter approved Blanchet for a *seventh* period, and *sixth* extension, of her leave of absence from January 8, 2016 (the date of her STD exhaustion) through February 1, 2017, this time as an ADA accommodation, which leave was intended to enable her to return to work. (Brown Declaration, RE 62-2, Page ID # 638; Glick Declaration, RE 62-3, Page ID # 709–10; Blanchet Transcript, RE 61, Page ID # 394, at 31:20–10.)

**C. Blanchet Cannot Provide a Reasonably Certain Return-to-Work Date, and Charter Terminates Her Employment**

On February 3, 2017, after her ADA accommodation leave had expired, Blanchet requested another leave extension through April 1, 2017. (Glick Declaration, RE 62-3, Page ID # 709.) Blanchet could not provide any medical documentation supporting that she had been medically released by her physician, or that she was or would have been able to return to work or perform *any* of her job duties on April 1, 2017. To the contrary, on February 10, 2017, Dr. Reynolds advised Sedgwick that Blanchet's symptoms "prevent her from performing all work duties at this time," and that Blanchet "would not be capable of working from home or in any other setting due to her severe depression and [suicidal ideations]." (Glick Declaration, RE 62-3, Page ID # 708.) On that same date, Dr. Reynolds informed Sedgwick that Blanchet's return-to-work date was "***unknown at this time***; expect April 2017." (*Id.* (emphasis added).) Five days later, on February 15, 2017, Sedgwick followed up with Dr. Reynolds' office for an update as to Blanchet's ability to return to work. Dr. Reynolds' office indicated that "***there is not a RTW in April 2017 as of yet.***" (*Id.* at Page ID # 707 (emphasis added).) In the end, Dr. Reynolds never released Blanchet to return to work or provided a return-to-work date.

Given that more than a month had elapsed since the expiration of Blanchet's approved ADA leave, and because Blanchet still could not provide a return-to-work date, Fred Contreras (Charter's HR representative assigned to Blanchet), James LaFave (Blanchet's assigned supervisor), and Jason Gibbons (Blanchet's assigned manager) determined it was appropriate to process Blanchet's administrative termination after *seven* months of *indefinite* leave. (Brown Declaration, RE 62-2, Page ID # 638.) Accordingly, Contreras sent Blanchet a letter by certified mail on March 9, 2017, communicating her termination and inviting her to re-apply for open positions with Charter once medically released to work. (*Id.* at Page ID # 638, 642–43.)

### D. After Sending the Termination Letter, Contreras Mistakenly Emails "Ok" Late on Friday Evening

*After Blanchet had already been terminated*, Sedgwick (unaware of the termination) reached out to Contreras on March 10, 2017 about Blanchet's requested extension through April 1, 2017. (Glick Declaration, RE 62-3, Page ID # 705.) Despite having just prepared and sent Blanchet a termination letter one day prior, Contreras made a mistake in a response email he sent Sedgwick at about 8:00 pm on Friday evening from his cell phone—stating "[h]er request for extension is ok with us." (*Id.*; Brown Declaration, RE 62-2, Page ID # 639.)

Unaware of Contreras's mistake, Sedgwick internally processed the ADA request as "approved" on March 17, 2019—four days after Blanchet learned of her termination. (Glick Declaration, RE 62-3, Page ID # 705.) Sedgwick called Blanchet on that same date (March 17), communicating an extended leave of absence through April 3, 2017. (*Id.*) Blanchet never responded to Sedgwick, however, as she admittedly was aware her employment had already been terminated. (Blanchet Transcript, RE 61, Page ID # 406–07, at 43:15–44:4.)

### E. Blanchet's Medical Conditions Extend Well Beyond March 2017, and She Does Not Return to Work Until 2019

Blanchet remained disabled and did not apply for a single job until her LTD benefits ran out in January 2019. She did not return to work until sometime after April 2019, more than two years after her termination. (Blanchet Transcript, RE 61, Page ID # 460, at 97:15–18; Blanchet Transcript Exhibit 2, RE 61-2, Page ID # 515 (indicating Blanchet had not yet found job as of April 18, 2019).)

## II. <u>Pertinent Procedural History</u>

### A. The District Court Granted Summary Judgment in Favor of Charter

In November 2018, Blanchet filed this lawsuit, asserting a disability discrimination claim under the ADA based on termination of employment. (Amended Complaint, RE 22, Page ID # 80–84.) Charter subsequently moved for summary judgment, which the district court granted, finding Blanchet was not a

"qualified individual" under the ADA because she was unable to perform her work duties and her requested accommodation was unreasonable, as a matter of law, under *Williams* and *Walsh*.[2]  (Summary Judgment Order, RE 93, Page ID # 1195–1207.)

### B. The Panel Reverses and Remands in a 2-1 Decision

The Majority opinion analyzes Blanchet's claim as one for failure-to-accommodate and applies a direct evidence analysis.[3]  Under that framework, the Majority concludes "Charter's fatal administrative mistakes and lack of clarity regarding Blanchet's termination date thus raise genuine disputes of material fact as to whether a 'reasonable accommodation' was possible."  Slip Op. at 7–9.  As explained in more detail below, the majority opinion is flawed because the issue is not whether Charter made administrative mistakes, but whether Blanchet failed to demonstrate she had a clear prospect of recovery.

It also directly conflicts with binding Circuit precedent, as Judge Kethledge's Dissent succinctly demonstrates:  *Williams* and *Walsh* apply to this case, their

---

[2] Blanchet also asserted an additional claim for intentional infliction of emotional distress, which the district court dismissed on summary judgment.  (Summary Judgment Order, RE 93, Page ID # 1195–1207.)  Blanchet did not appeal that dismissal.

[3] Blanchet never argued in the district court that her claim was one for a failure-to-accommodate, and the district court recognized that "Blanchet does not contend" that a direct evidence analysis should apply.  If this Court grants rehearing en banc, it may wish to revisit whether Blanchet forfeited these arguments in the district court or invited any error.

application here is "straightforward," and the district court "faithfully applied [these] precedents when it granted summary judgment to Charter." Slip Op. at 13 (Dissent).

## REASONS FOR GRANTING THE PETITION

This Court has clearly held "that when, as here, an employer has already provided a substantial leave, an additional leave period of a significant duration, with no clear prospects for recovery, is an objectively unreasonable accommodation." *Walsh*, 201 F.3d at 727; *see also Cooley v. E. Tenn. Hum. Res. Agency, Inc.*, 720 Fed. App'x 734, 741 (6th Cir. 2017) ("[O]ur case law is clear that when the proposed accommodation is an extension of a prior significant period of leave, the plaintiff must have demonstrated a clear prospect for recovery."); *Williams*, 847 F.3d at 394 ("An employer is not required to keep an employee's job open indefinitely."). In demonstrating a "clear prospect for recovery," an employee's physician's estimate of an *expected* return-to-work date does not indicate "a clear prospect for recovery, especially where an employee has repeatedly taken leaves of unspecified duration and has not demonstrated that additional leave will remedy her condition." *Williams*, 847 F.3d at 394; *see also Maat v. Cnty. of Ottowa, Mich.*, 657 F. App'x 404, 413 (6th Cir. 2016) (request for leave extension unreasonable even where physician provided date upon which hoped employee could return to work); *Aston v. Tapco Int'l Corp.*, 631 F. App'x 292, 298 (6th Cir. 2015) (requested leave extension went "beyond what constitutes a reasonable accommodation" because there was "no

certain or credibly proven end [to the plaintiff's condition] in sight").

Simply put, *Williams*, *Walsh*, and their progeny control the outcome of this case. Blanchet was never released to return to work, nor did she or Dr. Reynolds provide any "clear prospect for recovery," let alone a "certain or credibly proven end to the leave." *See Walsh*, 201 F.3d at 727; *Maat*, 657 F. App'x at 413; *Aston*, 631 F. App'x at 298. Rather, Dr. Reynolds informed Sedgwick that Blanchet's return date was "unknown." Making a return to work even less certain, Blanchet had recently qualified for (and was accepting) LTD benefits, for which she had to certify her inability to work.

Although Blanchet had a goal of resuming her job duties on April 1, "her hope that her leave of absence would be over in a few weeks is of little help" and certainly insufficient to overcome summary judgment. *Williams*, 847 F.3d at 394 (doctor's estimate of return-to-work date not "clear prospect of recovery"); *Maat*, 657 F. App'x at 413 (affirming district court finding that date provided by physician was not "definite" end to leave, but projected return date physician hoped plaintiff could meet); *see also Cooley*, 720 F. App'x at 741 ("A 'vague estimate' of the date that an employee can return to her job his insufficient."); *Cotuna v. Wal-Mart Stores, Inc.*, No. 16-2519, 2017 WL 5171247, at *3 (6th Cir. Aug. 31, 2017) (affirming summary judgment where employer denied requested leave, and employee received disability benefits and was unable to return to work for two more years, thereby rendering

leave request indefinite). Thus, consistent with this Court's prior holdings, the district court correctly held that Blanchet's *sixth* request for an extension of her *seven-month* leave, with no end in sight, was unreasonable as a matter of law.

The Majority opinion strays from *Williams* and *Walsh* by relying on *Cehrs*, which did not decide the legal question at issue in this case. *Cehrs* merely held that "no presumption should exist that uninterrupted attendance is an essential job requirement," and "medical leave of absence can constitute a reasonable accommodation under appropriate circumstances." *Cehrs*, 155 F.3d at 782. Here, Charter did not argue—nor did the district court find—that medical leave can never constitute a reasonable accommodation, and therefore *Cehrs* is inapposite.

The Majority quotes a decades-old Northern District of California case referenced by the *Cehrs* panel (*Norris v. Allied-Sysco Food Services, Inc.*, 948 F. Supp. 1418, 1439 (N.D. Cal. 1996)) in suggesting that *Cehrs* decided summary judgment is inappropriate whenever a requested leave would not unduly burden the employer. *See* Slip Op. at 9–10. The language quoted as the purported holding of *Cehrs*—"[i]f an employer cannot show that an accommodation unduly burdens it, then there is no reason to deny the employee the accommodation"—is not actually a holding at all. Instead, it is a discussion of the last step of the burden-shifting analysis under *Monette*, which applies (consistent with *Walsh* and *Williams*) only **after** the employee has **first** shown that the proposed accommodation is **objectively**

*reasonable*.  *See Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996) ("The language of this provision makes it clear that the employer has the burden of persuasion on whether an accommodation would impose an undue hardship.  However, the disabled individual bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable."), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

Based on its erroneous construction of *Cehrs*, the Majority reasoned that a reasonable jury could infer from the "administrative mistakes and lack of clarity regarding Blanchet's termination date" that Charter actually believed that the requested accommodation was reasonable.  Slip Op. at 9-10.  Because Charter arguably "considered it reasonable," the analysis goes, Charter could not have been unduly burdened by it.  *See id.* at 10 (noting "the *Norris* court concluded that since the employee's leave would not unduly burden the employer, summary judgment was improper").  This analysis ignores the burden shifting analysis established in *Monette*, however, and it conflates "objectively reasonable accommodation" with "undue burden."  Indeed, in *Walsh*, this Court disapproved of the same erroneous reading of *Cehrs* employed by the Majority:

> To the extent that the *Cehrs* Court suggested the employer must show that the accommodation proposed by the employee is unreasonable, it misread *Monette*.  *Monette* makes it plain that whether a requested accommodation is reasonable and whether it unduly burdens the

employer are separate inquiries. . . . *[T]he disabled individual has the initial and separate burden of showing a proposed accommodation is objectively reasonable.*

*Walsh*, 201 F.3d at 726 n.3 (emphasis added).

Consistent with *Walsh*, binding U.S. Supreme Court and other Sixth Circuit precedents also require that the *employee*, not the employer, bear the burden of first showing that a requested accommodation is reasonable. *U.S. Airways*, 535 U.S. at 401; *Hedrick*, 355 F.3d at 452–53; *Bratten*, 185 F.3d at 635. The Majority ignored these precedents and suggested Charter had to show that the requested leave was unduly burdensome before Blanchet made any showing that her request was objectively reasonable in the first place (a showing *Williams* and *Walsh* hold Blanchet cannot make because she lacked a clear prospect of recovery).

Rather than address the legal holding of *Williams* and *Walsh*, the Majority purports to distinguish them factually, but identifies only immaterial distinctions without a difference. The salient facts in *Williams* and *Walsh*, as here, were that the employees and their doctors could not provide a clear prospect of recovery that would permit them to return to work in the reasonably foreseeable future. Although the *Williams* plaintiff had a history of absenteeism before requesting the leave, the *Williams* Court's holding depended on the doctor providing only an estimate of the employee's return-to-work date after the employee had repeatedly taken leave—just like Blanchet's doctor could only estimate a return-to-work date after she had

repeatedly extended her leave.  *Williams*, 847 F.3d at 394–95.

The Majority strays even further from the holding of *Walsh*.  After noting the non-dispositive fact that Blanchet was being treated with medication and therapy but the *Walsh* plaintiff was not, the Majority suggests "a reasonable jury could find that Blanchet could recover from her illness within an acceptable time"—*even though Blanchet's treating physician could **not** make that determination in his exercise of medical judgment*.  Slip Op. at 11.  There is no evidentiary basis for the jury to contradict the judgment of Blanchet's physician, nor can the jury fill the gaping hole in Blanchet's proof with speculation as to a clear prospect of recovery.

Thus, *Williams* and *Walsh* constitute controlling precedent.[4]  They hold that the ADA does not require an employer to "keep an employee's job open indefinitely" and "additional leave is an objectively unreasonable accommodation where an employee has already received significant amounts of leave and has demonstrated 'no clear prospects for recovery.'"  *Williams*, 847 F.3d at 394; *Walsh*, 201 F.3d 718 at 727.  Based on this precedent, Blanchet's sixth request to extend her leave, without

---

[4] The Majority also states the *Williams* and *Walsh* plaintiffs "knew that they may be fired if they did not credibly demonstrate when they would return to work."  Slip Op. at 11.  That fact does not distinguish those cases because Blanchet *did* know that such a failure on her part would result in termination.  And even if she did not know, there is absolutely nothing in the record to suggest that such knowledge would have enabled Blanchet to provide a date certain for her return, as her return-to-work date was "unknown" to her treating physician, and she remained disabled for *years* after her termination.  Most importantly, an employee's awareness of the risk of termination does not factor into the holdings in *Williams* and *Walsh*.

a clear prospect of recovery, was "objectively unreasonable" as a matter of law, and the district court properly dismissed Blanchet's ADA claim.

## CONCLUSION

The Majority's disregard of controlling Sixth Circuit and Supreme Court precedent not only disrupts uniformity of the Court's decisions, but also will cause significant confusion about when it is lawful for employers to terminate employees on indefinite leave with no clear prospect of recovery. This issue was settled law before this case, and the Court should rehear it en banc to restore uniformity of the Court's decisions and consistency with binding Supreme Court precedent.

Respectfully submitted,

*/s/ C. Celeste Creswell*
C. Celeste Creswell
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
Tel: (404) 400-7300
ccreswell@kcozlaw.com

*Counsel for Defendant-Appellee Charter Communications, LLC*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Brief complies with the type-volume limitation provided in Fed. R. App. P. 32(a)(7)(B). The applicable sections of the foregoing Brief contain 3,711 words of Times New Roman (14 point) proportional type. The word processing software used to prepare this Brief was Microsoft Word.

This 22nd day of March, 2022.

> */s/ C. Celeste Creswell*
> C. Celeste Creswell
> KABAT CHAPMAN & OZMER LLP
> 171 17th Street NW, Suite 1550
> Atlanta, Georgia 30363
> Tel: (404) 400-7300
> ccreswell@kcozlaw.com
>
> *Counsel for Defendant-Appellee Charter*
> *Communications, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Petition for Rehearing En Banc was filed via the Court's ECF system, and thereby electronically served upon counsel of record on March 22, 2022.

/s/ C. Celeste Creswell
C. Celeste Creswell
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
Tel: (404) 400-7300
ccreswell@kcozlaw.com

*Counsel for Defendant-Appellee Charter Communications, LLC*

**ADDENDUM**

Opinion, *Blanchet v. Charter Commc'ns, LLC*, No. 21-5073 (6th Cir. Mar. 8, 2022).